Okay, this is the case of Susan Hileman v. Louis Maze et al. Mr. Harden. Thank you. May it please the court, counsel. This case arises out of the Democratic primary held on March 21, 2000 in Alexander County. The plaintiff was a candidate for renomination at the circuit clerk. At the conclusion of the primary and after the votes were canvassed, it was determined that the plaintiff had not been renominated. The plaintiff brought an action to contest the election. The election was set aside on the trial court's finding that the primary had been permeated with fraud. At the conclusion of that contest, the plaintiff filed an action in the United States District Court against defendant Maze, pursuant to 42 U.S.C. 1983, and against the other defendants under the Illinois Election Code and under the state common law action for conspiracy. In October of 2002, the District Court, pursuant to Judge Herndon's ruling, determined that the statute of limitations had run on the 1983 action. And he therefore dismissed it. As a part of that dismissal order entered at the time, he found specifically that he was dismissing state court actions without prejudice because the underlying action, the federal action, had been dismissed. So under 1367C3, there was no basis for continuing federal jurisdiction. In subsequent appeals, the Seventh Circuit reversed Judge Herndon's ruling. When that case was remanded, Judge Herndon entered an order in July of 2004 in which he said that the cause of Section 1367, supplemental jurisdiction over the state claims, returns upon reinstatement of the federal claim. The court reinstates the plaintiff's state court claims found in Counts 2 and 3 of her amended complaint. The effect of that was to restore the case to the exact same position it had been in upon the entry of the erroneous order by Judge Herndon dismissing the case. The original dismissal was only of the federal claim, correct? That's correct. So the state claim was dismissed simultaneously? The state claim is a part of the dismissal order. Judge Herndon found that because the federal claim was dismissed, the necessary federal case to which the state claims would be pended was no longer there. So under 1367C3, they were dismissed without prejudice. Under 217, under the statute, does it make any difference whether it's dismissed with prejudice or without prejudice? It makes a difference two ways, Judge. The first thing it makes a difference on is clearly it was without prejudice, but on the reversal of the federal claim, it was reinstated by the court. It was reinstated because, first of all, as Judge Herndon noted, the federal claim to which these cases were pending was reinstated. But secondly, under the cases that we've indicated to you, the effect of reversal of the federal claim is not only to reverse the order that was in error, but to reverse and set aside any other order that was ancillary or dependent upon it. Now, I understand that. But according to the wording of the statute itself, does it make any difference whether the case is dismissed with prejudice or without prejudice? It does make a difference because under 13217, obviously, it was dismissed without prejudice. It is not a res judicata determination on the merits, and it triggers the right to refile in state court. One of the issues that get involved in this case and one which the trial court and, frankly, the plaintiffs or the defendants have refused to acknowledge is what's the effect of Judge Herndon's reinstatement. And I submit that that is a critical issue in this case. Indeed, ultimately, the trial court determined that this case would be dismissed by reason of violation of the statute of limitations for two reasons. The first is that 13217 didn't apply to a dismissal under the circumstances of this case by reason of the fact that the court declined to exercise supplemental jurisdiction. And it specifically held that the declining to exercise supplemental jurisdiction was not a dismissal for lack of jurisdiction. The only case that the court cited and, frankly, the only case that the defendants cite that support that proposition is DeClarke. And I simply would say to you that DeClarke doesn't address that issue. The only issue that DeClarke addresses is whether or not the dismissal for improper venue is a dismissal for lack of jurisdiction, and DeClarke said it was not. There are, in fact, two cases which have addressed the issue directly. The first is the Supreme Court's decision in Timberlake v. Solano Hospital. Timberlake Court addresses the case squarely faced. What the Timberlake Court said and the facts of the Timberlake Court was that the plaintiff had filed an action in state court, taken a voluntary dismissal, and then had refiled a federal action with the state claims being pendent to it. The federal claim, there was a summary judgment against the plaintiff in the federal claim. As in the original dismissal of this case, the federal court under 1367c3 declined to exercise continuing supplemental jurisdiction. The plaintiff then tried to refile in state court. The state court dismissed claiming, among other things, that that would be a second refiling under Flester. The assertion made by the plaintiff in that case was, well, wait a minute, no, this can't be a second refiling under Flester because the federal court had jurisdiction. It had subject matter jurisdiction, but it just declined, discretionarily declined, so that doesn't count under 217. The Supreme Court held to the contrary. The court noted that there was an erroneous assumption that pendent jurisdiction, supplemental jurisdiction under 1367, is different than subject matter jurisdiction. It said that was erroneous. In fact, supplemental jurisdiction is a form of subject matter jurisdiction. Accordingly, a dismissal for lack of supplemental jurisdiction has no different effect on the plaintiff's right to refile under 13217 than does a dismissal for lack of jurisdiction, subject matter jurisdiction. Generally, that's at 175 on our second, 164, 165. That is exactly the issue that was presented in this case, and the trial court and the defendants stopped in 1991. Timberlake was decided in 1997. Now, there is no question, and you can look at the Timberlake and the cases it cited, that the trial court's subsequent, after the reinstatement, subsequent decision not to exercise supplemental jurisdiction is effectively, under the Timberlake Code, a dismissal for lack of jurisdiction under 13217. There is no question about that. If there is any question, the court had occasion to address it again in the Noah case. That's a case in which there was ultimately a case filed by a teacher who had become disabled and had lost the job because, presumably, of a disability. The teacher filed a federal claim under the Americans with Disabilities Act. She filed a pendant state claim involving, among other things, a breach of contract. Summary judgment was entered against the teacher in that case on the federal claim. The court, and again under 1367, dismissed without prejudice, because of the loss of the federal claim, dismissed without prejudice the state claim. On refiling of that, the school took the position that that case could not be promptly refiled and essentially asserted that res judicata applied to the entire federal case. And the Supreme Court had occasion to discuss the so-called discretionary dismissal of the state claim. And I would ask you to look at 197-002-392, because what the court said was whether the dismissal, that is the 1367-C-3, whether the dismissal was discretionary or otherwise is beside the point. It was for lack of jurisdiction. Then in the next page, the court says, By declining jurisdiction over the plaintiff's pendant state claim, dismissing it for lack of jurisdiction, the district court, in effect, preserved the plaintiff's right to pursue the matter in state court. That is exactly what happened in this case. Because the point that is ignored by the trial court and ignored by the defendant, and which is the second basis for the judgment of the trial court, is that whatever happened in 2002 was undone by the reversal of Judge Herndon's order. Well, what about the duty of the plaintiff to use the one-year statute in October of 2002 to refile in state court? Judge, if, and this is where the Wade case and the other cases that they cite comes in, if the judgment of the federal court had been affirmed, we wouldn't be here. Well, but the cases, in one case where the plaintiff waited to see what the judgment of the appellate court was, the court said, look, you took a gamble. That's right. So why is it that you can gamble to lose and not be able to file? But you can't gamble to win and not be able to file. The legal effect of reversal of the state. The reversed was the federal case, not the state case. Judge, I guess what I would say is if you look at the case that we provided to you from the Southern District, which cites a number of the state cases, the Dasher case, Judge Murphy in that case says that the effect of reversal not only reverses the erroneous order, but it reverses everything else that was ancillary to or dependent upon it. If you look at the dismissal by Judge Herman originally in 2002, his ruling by its language makes clear that the sole and only reason for it was the dismissal of the federal claim. So the dismissal in 2002 was dependent upon and ancillary to the order that statute of limitations had been breached. And when you look at what he did on remand, he reinstated that case because the basis for its being dismissed was removed. And he put the cases back in precisely the same place that they had been before the reversal. Wasn't that at the suggestion of the Seventh Circuit? The Seventh Circuit said, take a look at it. And then Judge Herman again declined jurisdiction. That's not true. Judge Herman reinstated the cases, and then the parties started reasserting their motions to dismiss. It was only after the case had been reinstated, only after the parties had resubmitted motions and arguments, only after those things had been done, that Judge Herman decided again to decline jurisdiction. And notice that the basis for his declining jurisdiction the second time was different than the first time. But does that matter? Yes, it does. Why? It matters because in the first instance, what's very clear is that the jurisdiction was declined the first time as an ancillary or dependent fact upon his dismissal of the federal claim to the statute of limitations. That was the only reason he did it. In this case, he reinstated it because the basis for his previous dismissal no longer existed. And if you look at the O'Connor case we've cited, which is an appellate court case, the O'Connor case establishes what the effect of reinstatement is because in the O'Connor case, when it files an action, the action was dismissed for moral prosecution. The court reinstated it. The court again dismissed the action for moral prosecution. The court again reinstated it. The court again dismissed the action for moral prosecution. And the court didn't reinstate that, but the plaintiff refiled it. The assertion was made that the time somehow or the other started to run from the first time the court dismissed for moral prosecution and what the appellate court said, no, it didn't. The reason it didn't is because the case was reinstated, put back in the same place as it was, so that there was no, to use the appellate court term, there was no final dismissal for moral prosecution until the last one. And it was the last one from which the time limit for 13-17 began to run.  That's the O'Connor decision. We've cited the O'Connor case in the brief, Judge. It's third district case from 1984. And it says that you can wait. What the O'Connor case says is the 13-17 time doesn't start to run until the final dismissal. In order to do what your Honor says, and to start the clock when your Honor says, or suggests, it should start when the defendants argue, you have to assume that the reversal means nothing. And I don't think you can assume that here because what is clear in this case is that the initial dismissal was ancillary to and dependent upon the erroneous judgment dismissing because of statute of limitations. Had Judge Hendon decided not to reinstate the state court claims, because it really wasn't ordered to in the 7th Circuit opinion, had he decided not to reinstate them, he was only told to take a look. What would your position be then? I haven't thought about that, Judge. I don't know because that's not what happened here. The critical fact here is that he did. If he hadn't, we may well have had a problem, but he did. And the fact that the defendant, that neither the defendant nor the trial court want to acknowledge that doesn't mean it didn't happen. Because when he did, when he did, we're back in the same place we were, which is where we have to be after a reversal. We're back in the same place we were before the erroneous order was entered. And when he put us back in the same place that we were before that erroneous order was entered, it's as though it never happened. That's essentially what the O'Connor case from the appellate court says. That's what the Dyser case from the Southern District says. And there's no law to the contrary. And indeed, they cite no law to the contrary in that regard. So the determination in the first instance, Judge, that somehow or the other 1327 doesn't apply to a dismissal for the court's declining supplemental jurisdiction is just flat-out wrong. Because the Timberlake, of course, the Noack case say so. And it is of some significance that the defendants never even mentioned that. Now, the second part of the judge's order was, well, even if it does apply, the clock starts ticking from the original dismissal, as you and I have been discussing, Your Honor, in 2002. The only way you can reach that conclusion is to ignore the reinstatement that Judge Herman clearly entered in 2004-2005, after the appeal. Once the reinstatement is done, the O'Connor case leaves no choice as to what happens here. And it's also significant in this case that defendants don't discuss the effect of the reinstatement or the effect of O'Connor. It isn't mentioned in the brief. And so in order to conclude what they conclude, you have to pretend that somehow or the other the law stopped before we got to these cases. And what the O'Connor case very clearly said, and to quote from it, it says the plaintiff's initial complaint was dismissed three times for want of prosecution. It was reinstated after the first two dismissals because each reinstatement placed the case in the same position it was before dismissals. The first two dismissals were not final. Only the third dismissal was final because the complaint was not thereafter reinstated. Thus, there was one dismissal for want of prosecution, a plaintiff filing a one-new action. It's the same thing here. Once the court reinstated the defendant's actions, it simply cannot be argued that somehow or the other that the order that was reversed controlled. And for the trial court to find otherwise was plaintiff. Thank you. Mr. Halligan, would you like to speak? Yes, ma'am. Mr. Harman. Yes. Mr. Bain.  Mr. Bain. Yes. Mr. O'Hara. Yes. Mr. Gothman. Yes. Mr. Osmond. Yes. Thank you, Justice Otter. In my brief, I have set out what I think is the essence of our contention that 1317 does not apply to the facts. That argument is etymological. It is the use of words. It uses logic, or I hope it does. It uses a history of 1317, and it cites cases, but here the ground sort of diverges between our reading of cases and how the plaintiff reads cases. The clerk is not cited as if it had some sort of magic controlling on all fours. But any reader of my brief would see that the clerk is cited for a proposition, a starting place, of how the Supreme Court wants Section 13217 read. It is not to be expansively read, construed. It is to be restrictively construed, explicitly to be limited to the circumstances it lists. And so there, that's sort of the dividing place because the other side cites cases that I want to discuss with you, and we read them quite differently. We don't read them as controlling, and indeed we read them for the propositions that they have been cited as dictum, not as anything even essential to the whole. If I might find my cases, they're here. Perhaps you could begin with Timberlake. That's exactly the case that I have, Judge. And I want to start because Timberlake talks about Flessner, and Flessner limits the number of refilings pursuant to 13217. In Timberlake, number one, there was a filing in state court that was voluntarily dismissed. Secondly, the plaintiff filed in federal court. The federal court declined jurisdiction. Third, the plaintiff filed in state court. The plaintiff argued that simply because the third get out of here dismissal, please leave the premises, whatever it is the federal court said, was not a third dismissal and should not operate to prevent, I mean the second case, the federal court dismissal, should not operate to limit the third filing because it was a declination of jurisdiction. The plaintiff of the court held no and said exactly what he says. And he says the pending jurisdiction is part of supplemental jurisdiction. Accordingly, a dismissal for lack of supplemental jurisdiction has no different effect on a plaintiff's right to refile. That's what was said, but you must continue in the next paragraph. Yeah, but the rest of the line is under section 13-217. That's correct, and I thought I read that. So you would agree that 13-217 does apply where there's a dismissal for lack of supplemental jurisdiction? No, I do not. I'm sorry, I spoke over you. No, I do not, because when you look further as to what Justice Harrison meant, the next paragraph explains it. He says, under the statute, the reason a cause of action was originally dismissed is important in determining whether a plaintiff can subsequently refile. That is to say, he says, does it fit the statute? That's the first text, and that governs your right to refile. But after the cause has been filed a second time, the reason for the second dismissal is of no consequence at all. No matter why the second dismissal took place, the statute does not give the plaintiff the right to refile again. That's the essence of the case. That's what it holds. It says you can only file twice. And the cases, at least I suggest, cases should be read for the propositions they are intended, and the language not be expanded beyond what was presented to the court. I want to follow up with Nowak, because Nowak is a case that he cited also. In Nowak, N-O-W-A-K, number one, the plaintiff filed in federal court, which declined to assert jurisdiction over the state claims. The second filing then was in state court. And the issue that was raised in Nowak was this, as it relates to this case. Did the declination of jurisdiction operate as claim preclusion? Res judicata. And the court held no. It's not, and the reason it did not operate as claim preclusion, the plaintiff could not have their claim precluded because there had been a declination of jurisdiction, because there had been no judgment on the merits in the federal court. That's what Nowak says. Now, I can pick language out of any case. You pull it down from the shelves, and I can use any of the language that is in that case to justify any position that I want to take. But that does not mean that's what the case says. So it's there that the ground divides between us, I think. Now, in Part 2, I have gone through the declerk and the history to show you that, at least in my judgment, and I presented the court for the defendant here, the exclusive way that 213.217 is to be read. And I point out here the risks that I think that you should concern in ruling for the plaintiff. The risk is a reassertion of the reasoning of Roth, which I have cited in my brief, which is that reasoning has been suppressed by the Supreme Court in how it says the statute is to be read. But then again, to use that Roth analysis, then here's the next risk. You then issue a decision that may be stretched in later cases by lawyers who want to pick and pull certain statements out of any case to justify the position that they are taking in front of the court, even though the case actually did not hold it. So I'm asking the court to confine its attention to case law to exactly what was held in the case. My second argument that I put is if 13.217 does apply, then the plaintiff has not complied with the countdown clock that it provides of one year. 13.217 says that you have one year from the date of dismissal by the federal court, the federal district court, because only the district court can decide to take discretionary jurisdiction. That's not for the federal appeals court. That happened on 10.2402. The cases that I cited, beginning with Huff and ending with Wade and Suslick, all say that that one year is from the date of dismissal. That's the countdown clock. That would have expired on 10.2403, and this case was filed in Spokane Court after that date. Ergo, it should be dismissed. Now, the second reason that I want to discuss is the reversal by the Seventh Circuit. That occurred on 7.12.04. Let me state that. The Seventh Circuit reversed on 7.12.04 after the state clock had expired. 13.217 had already run, and the plaintiff acknowledges that in her brief. Now, the plaintiff's cases that she cites is led by O'Connor and the others. I want to discuss O'Connor. Before you do, let me ask you, this is an order that's kind of unusual that the judge wrote. It's in the alternative. Yes, so? So, one says 13.217 doesn't apply, and says that she busted the statute of limitations by filing her state claims on May 26, 2005. But gives her no credit for having appropriately filed them in a federal court in a timely manner. Filing? Her state law claims. Her state claim was filed one day before the expiration of the statute of limitations. Right, but the trial court in Section B of this order gives no credit for that. Okay, in Part A, 13.217 does not apply, and therefore it doesn't matter because the time ran. Okay, now on Part B, the court is saying, pursuant to the Civil Practice Act, that this is conditional so that you don't have to send it back. It's an alternative ground, and it says that the time, or at least it's my memory, the time would have run because it would have expired one year after the dismissal. Which means it would have expired on 12- It says her claim was filed in state court on May 26, 2005, more than two years following the March 21, 2000. It doesn't even talk about the federal claims and everything we're talking about here today. Let me address that. What you're getting at really is this. What effect does the reversal have? What effect does that federal thing have?  Now, I want to start there, because O'Connor, which is cited to this court, held that a reversal of a judgment for support cannot act as race judicative. That is to say, it is not claim preclusion. It doesn't say a thing about 13.217, and it has to do with claim preclusion. Now, here's why that makes a difference. It doesn't say anything about the statute of limitations, though? I understand the claim preclusion. That's right. Here's- It doesn't say you muster statute of limitations, though. The statute of limitations, you mean the one day- No, if you have filed appropriately, and then it's dismissed for whatever reason, and the appellate court reverses it, you don't lose the claim because the statute of limitations ran during appeal, do you? At least under anything but 13.217. Let me see if I- let me address the question. If I have misunderstood, I'm sure you'll stop me. There are two jurisdictions that are involved, the federal jurisdiction, the federal court, the federal system, and the state. Okay. If you were to substitute, for example, Kentucky, let's say- Okay, I thought that was the bias. If a case would be filed in Kentucky, and for whatever reason, they had lost jurisdiction, and the time had expired, what then would happen in the state? Would they be able to file that? Would you get enough credit that you could file it the next day? I must confess I don't know the answer to that. What you're asking is, if I understand what you're saying, once it was filed in the federal court, the statute of limitations was complied with. Am I correct? Right. Now, the next thing is, if it is returned to the state because of a dismissal by the federal court, or whatever, declination of jurisdiction, then you have one year to file, because the statute of limitations already would have expired. In this instance, under 13217, the court found she should have filed it within one year of the dismissal by Judge Herndon in 02. And that's my point, Mr. Howerton. As you've just said, on dismissal for declination of jurisdiction, she would have had one year to refile, which is the statute we're talking about. Yes. But you've taken a position the statute doesn't apply, so that's what's confusing me. Okay. You do agree it doesn't apply. No. As I understand the Civil Practice Act, a judge can find, for example, that 13217 does not apply. And then if this court were to reverse that finding, he has a conditional finding that if you reverse me on that, then the provisions of 13217 were not complied with. That's the essence of the order. Given that, what effect did the reversal by the Seventh Circuit have? We say none. We urge this court to say none, and here are the reasons. Number one, that is a state clock. The cases that I've cited says that an appeal in the federal system has no effect on that clock. Number one, there's no tolling provision. And number two, Sussex says that the appeal, there's nothing pending. That is to say there is this period of time where there is nothing that is pending. But number two, and here is a risk, I suggest, is because statutes of limitation and Section 13217 are procedural rules. They're not substantive rules. If they were substantive rules, then we would expect, perhaps, a federal court or a federal decision would have supremacy under the Supremacy Clause. But it is well known that for matters of procedure, the federal court does not trump state law. The cases are clear that the clock continues to run. The risk, if you held that it would trump or stop the state clock or restart the state clock, then you would be handing to the federal court, in this peculiar instance, this almost discreet, unique instance, you would hand the clock to the federal court rather than retaining it in state court. And I think that's why the cases say what they do, way excessively from the cases that I cited. Now, there's no language for that, but I point that out as a risk of what happened if you were to rule that. So I think the rule is that the state governs its own clock. And if you're correct on that, then, and 217 applies, then the time for filing would have been within one year after the first dismissal, which is October 24, 2002. Yes, ma'am. And that's the position that we take. And I think that that's what this court should do. On those two points, are there any more questions? Something? Okay. Now, the next issue is collateral estoppel. And although I've talked about plain preclusion and the reason I like that, it's still a race judicata. It's a little clearer to me. It says what the doctrine does. Collateral estoppel is issue preclusion. That is to say someone cannot use an issue. Ordinarily, it is an issue that is tried, and a decision is such that, or a judgment is such that, the issue must, that issue must have been decided some way. And then that decision, in the other case, is used in another case to prevent the plaintiff from retrying that issue. Usually it's used by the defendant. Occasionally it can be used offensively. That doesn't apply in this case, and it doesn't because, I think it's on page 18, the issue is going to be identical. It is the issue in the second case. This case must be identical to the issue in the federal case. That is not true. Whatever issue there was, and I'm not certain there was an issue, but the issue, I suppose, was reinstatement or assertion of jurisdiction, and then a declination of jurisdiction would be the issue. That's quite distinct from the issue of statute of limitations and the application or, and or, the operation of Section 1327. So there's no identity. And secondly, and most importantly, and this is, for Congress, quite important for this, there was no judgment on the merits. There was no judgment on the merits in the federal case, and so therefore collateral estoppel does not apply. What about their, their argument of acquiescence? In, in, in acquiescence. I'm getting to that. Oh, I was next, and that's a, that's why I think it's such a great question. Sorry. No, no, I should be answering your questions, not getting to the next part of my argument. I understand that acquiescence, from what I understand of their argument, and I do not mean that critically in any way. I'm not demeaning anyone's arguments, but what I understand about the argument is that they have acquiesced, we have acquiesced in the case being filed in the state court. Now, go back to the cases. The cases that he decided, he cites, had to do with race judicata and claim split. Go ahead. You have something short. That's not involved in this case. And secondly, we have consistently and always said the state claims should be returned to the state court. We don't argue with that. The argument is not that, but rather the application of the statute of limitations in section 13-270. We've not acquiesced in that. Even if we were to say the claims should be returned to the state, that doesn't mean that we say, hey, you can do it any time you want. By the contrary. Thank you very much. Thank you. And we'll give you additional time if you require anything. Let me start off by asking a question. Let's assume that it's apparent from the record that after this was dismissed by the federal court, timely appeal made, Seventh Circuit said what it said and said reconsider. And the district court did what it did. That's uncontested. And we're assuming that everything was timely there. Is there anything in this record and is there any case that you can cite that would indicate that in determining its own procedure, the state could not say all that's fine, all that's done properly, all that's done timely, but we are going to restrictively determine that the case has to be refiled in the state jurisdiction within a time starting from the initial dismissal, whether you're successful with the federal appeal or not, or whether you decide not to appeal? Judge, I believe there is, and I believe it's in 217. Because what 217 does intrinsically is to recognize the federal court's jurisdiction and to say that if the federal court acts however the federal court chooses to act, but ultimately the dismissal is for, quote, unquote, lack of jurisdiction, then 217 is going to apply. And what happened in this case, and this is the fact that I think is important in that, because the fact that the defendants never want to talk about is the legal effect of the reinstatement order. Because what happens in the reinstatement order is we're put back, much as the plaintiff was in the O'Connor case, we're put back exactly in the circumstances we were in. On the day before, the erroneous dismissal order was entered by Judge Herman. Now, while it may be true that the federal rules and the federal courts don't control state procedure, they do control federal procedure. The effect, and I'm citing from 486F sub 798 in the Dasher case, and I would invite you to look at the language and the cases that are cited there, and frankly the state law about the effect of reversal is not different. It says, a corollary of the rule that reversal of a judgment leaves the parties in the same position as if the judgment had never been entered, is that any judgment that is dependent upon the reversed judgment is reversed as well. On the reversal of a judgment order or decree by the reviewing court, a dependent order judgment or proceeding ancillary or accessory to it shares its fate and falls with it. That is exactly and precisely what Judge Herman did when he said, and I quote, The cost section of 1367 supplemental jurisdiction over plaintiff's state claims returns upon the reinstatement of plaintiff's federal claim. The court reinstates the plaintiff's state claims found in counts two and three or amended to the plaintiff. It then directed that the magistrate go back and pick up the discovery process where it was before the dismissal. So the thing that Mr. Howerton has never explained to you is how do you get around the reinstatement? Well, the parties have argued that you should not expand 13-217. And I submit we're not. And there is nothing in 13-217 that talks about reinstatement. But it does. In fact, the plain language of the statute says that you have one year from or within the remaining period of statute of limitations, whichever is greater, after such judgment is reversed or after the action is voluntarily dismissed or an action is dismissed from one of prosecution. It doesn't talk about reinstatement. It doesn't talk about taking a gamble on the appeal as Wade does. I need you to speak to that. I submit to the court that the answer to that is precisely in the O'Connor case. Because what the O'Connor case said is you had dismissals. We had a dismissal in the federal case in 2002 when the erroneous dismissal order was entered on the 1983 claim. In the O'Connor case, there was an initial dismissal from one of prosecution. On the federal claim? Yes. And because of the federal claim, Judge Herndon entered a 1367C3 order in which he declined jurisdiction and dismissed without prejudice the state court claims which were pending. It's analogous to the dismissal from one of prosecution in the state claim. Because neither of them were with prejudice. Now, what happens then is the state court claim in O'Connor and the federal claim in this case were reinstated. And what the O'Connor court said that did was to put everybody back where they were. So it's a start over. It's not a, quote, final dismissal. What the O'Connor case says that 13217 doesn't start to tick until there is a, quote, unquote, final dismissal. And in the O'Connor case, the final dismissal was after the third DWP. In this case, the final dismissal for the pending jurisdiction was not in 2002. It was after the case had been reinstated and after the court had reconsidered the motions in which the defendants asked the court to decline to exercise supplemental jurisdiction. And the only other thing that I would say, Your Honor, about that. I find it remarkable that the argument is made, an oral argument, it certainly didn't appear in the brief, about Timberlake and Noack. I don't know how the Timberlake court can say it any clearer. And if you look at the context of the Timberlake case, it's clear that the Timberlake case says that the dismissal, the court's decision to dismiss, or lack of supplemental jurisdiction, refusal to exercise it, is dismissal for lack of jurisdiction under 217. And there's no question about that. In the language we've cited to you from the Noack case, it's the same thing. I wish counsel had bothered to discuss those things in his brief so we could have rebutted his answers more fully in our reply brief, but he chose not to. What's clear to me is that the dismissal of this case is erroneous, and this court must reverse it. Thank you. Thank you, gentlemen. We'll take the matter under advisement and issue an opinion in due course. That ends the morning session for the court.